IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| TANYA BRITTON, JOSEPH CARSON, MARILYN CARROLL, CARMEN VASQUEZ and PRO-LIFE MISSISSIPPI, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 3:06cv374 WHB-JCS ) |
| v. | ) ) |
| SHIRLENE ANDERSON, individually and in her official capacity as Chief of Police for the City of Jackson, Mississippi; ROSEMARY HARPER, individually and in her official capacity as a police officer for the City of Jackson, Mississippi, and JERRY BRISTER, individually and in his official capacity as a police officer for the City of Jackson, Mississippi, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

### INTRODUCTION

1  This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the policies, customs, and/or practices of the City of Jackson whereby police continually and systematically infringe upon the free speech rights of its citizens by threatening arrest or citation under various city and state laws, including a Jackson noise ordinance that was declared unconstitutional and enjoined from further enforcement by this Court in 2004, for conduct protected by the First and Fourteenth Amendments to the United States Constitution.

2. The unconstitutional policies, customs and/or practices of the City chill and deprive Plaintiffs of their right to free speech, as well as those of third parties not before the Court. Plaintiffs and others have suffered, are suffering, and will continue to suffer irreparable injury to their First Amendment rights absent declaratory and injunctive relief.

3. Plaintiffs seek declaratory judgment that the challenged policies, customs and/or practices are unconstitutional, preliminary and permanent injunctive relief, and damages.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3),(4) which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities as stated in paragraphs 1 and 2 above. The court may address the declaratory relief requested pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in the Southern District of Mississippi, Jackson Division, pursuant to 28 U.S.C. §1391(b), because the claims arose in the district.

## IDENTIFICATION OF PARTIES

6. Plaintiff Tanya Britton is a citizen of the United States and a resident of Brandon, Mississippi. Britton is President of Pro-Life Mississippi.

7. Plaintiff Joseph Carson is a citizen of the United States and a resident of Jackson, Mississippi.

8. Plaintiff Marilyn Carroll is a citizen of the United States and a resident of Milford, Connecticut.

9. Plaintiff Carmen Vazquez is a citizen of the United States and a resident of West Haven, Connecticut.

10. Plaintiff Pro-Life Mississippi is a non-profit corporation organized and existing under the laws and constitution of the State of Mississippi, and is a corporate entity capable of suing and being sued. Its purpose is to oppose abortion and promote human life and dignity. It has approximately 4,000 active members and supporters.

11. Defendant Shirlene Anderson is Chief of Police for the City of Jackson, Mississippi. She is sued in both her individual and official capacities.

12. Defendant Rosemary Harper is a police officer for the City of Jackson, Mississippi. She is sued in both her individual and official capacities.

13. Defendant Jerry Brister is a police officer for the City of Jackson, Mississippi who acts as the City's special events coordinator. He is sued in both her individual and official capacities.

## ALLEGATIONS OF FACT

14. Since 1996, Pro-Life Mississippi has held an annual rally on the public ways of Jackson at or near Jackson Women's Health Organization, 2903 N. State St. during which its members and supporters express their views on abortion, pray, and sing. As part of its ministry and peaceful pro-life advocacy, members of Pro-Life Mississippi offer literature and sidewalk counseling to persons approaching the clinic. This is done in an effort to persuade women not to abort their unborn babies by offering alternatives to abortion, including adoption, advice, and emotional support.

15. For years, dating back to well before 1996, the Jackson Police Department has harassed pro-life demonstrators and street preachers on the public ways of the City by

threatening citation or arrest on trumped up charges such as disturbing the peace, trespass or obstructing traffic. Often, the police have actually cited or arrested demonstrators and street preachers only to have the charges dropped or dismissed before trial. On the rare occasions when these cases have actually gone to trial, the pro-life demonstrators and street preachers have usually been found not guilty.

16. In 2006, Pro-Life Mississippi intends to coordinate its annual event with a national event sponsored by Operation Save America, a national pro-life ministry. The event will occur on the public ways of Jackson during the period July 15-21, 2006.

17. Plaintiff Tanya Britton ("Britton") is a Christian who possesses the firm belief that abortion is morally wrong and sinful. She believes it is her duty to God to publicly oppose abortion.

18. Plaintiff Joseph Carson ("Carson") is a Christian who believes it is his duty to God to openly proclaim the good news of Jesus Christ. He fulfills this duty through open-air preaching of the gospel of Jesus Christ on the public ways.

**Events of December 12, 2005**

19. On or about December 12, 2005, Carson and another gentleman were engaged in un-amplified street preaching on the public streets of downtown Jackson when they were approached by several Jackson police officers. The officers stated that Carson and his associate were being too loud and in violation of the City's noise ordinance. The officers then said they needed a permit.

20. The officers further told Carson that without a permit he could not remain on the street corner and that, if he continued to preach without a permit, he would be arrested.

4

21. The officers then said Carson had to let Officer Brister know of his plans before "you do anything, before anything goes on in the city."

22. Carson and his associate then went to the Jackson Police Department to inquire about a permit. They were referred to Defendant Officer Jerry Brister ("Brister"). Brister showed them Jackson Code of Ordinances §§ 54-86 through 54-91 (regulating noise) and told them they needed a permit.

23. Sections 54-86 through 54-91 of the Jackson Code were declared unconstitutional and enjoined from further enforcement by consent judgment entered on August 4, 2004 in *Baldwin v. City of Jackson*, 3:04 CV 545 BN. *See* Consent Judgment, attached hereto as Ex. 1.

24. Notwithstanding the laws having been declared unconstitutional, Brister told Carson that the City would not issue a permit under the defunct ordinances allowing him to stand on City sidewalks and preach, but if Carson "wanted to go to a park" and talk to people that would probably be "okay".

25. Brister then said "no one has any right to create unnecessary noise."

**Events of February 27, 2006**

26. On Monday, February 27, 2006, several pro-life demonstrators were present at the Jackson Woman's Health Organization located at 2903 North State Street in Jackson. Among those at the clinic that day was Rev. Philip "Flip" Benham of Operation Save America.

27. During the late morning/early afternoon hours, Rev. Benham and others were on the sidewalk on State street holding pro-life signs. Rev. Benham was also engaged in publicly proclaiming the gospel of Jesus Christ to a small group of individuals

5

gathered on the other side of the street in opposition to the pro-life demonstrators.

28.     The police were summoned, and soon three police officers arrived, one young man and two women, one of whom was Defendant Rosemary Harper.

29.     The officers threatened Rev. Benham with arrest, telling him he was "disturbing the peace" by his preaching. Rev. Benham attempted to explain to the officers that he was merely exercising his First Amendment rights to express himself and exercise his religion.

30.     Harriet Ashley, another pro-life demonstrator who had been some distance away when the dispute first arose, came over to join in the conversation and try to assist. When Officer Harper learned that Mrs. Ashley sided with Rev. Benham, Harper threatened her with arrest, too.

31.     The officers then summoned a superior officer, upon information and belief, Sergeant Otis.

32.     When the superior officer arrived and was told by Officer Harper that Rev. Benham was disturbing the police, the superior officer immediately told the officers to arrest them all, without any other question, comment or discussion, and without hearing from the pro-life demonstrators at all.

33.     In fact, Sgt. Otis approached Rev. Benham and told him to "keep his mouth shut" and that "anyone who opened their mouth would be arrested" for disorderly conduct. Rev. Benham and the others reluctantly obeyed, and Otis left shortly thereafter.

34.     Rev. Benham then ceased preaching in order to avoid arrest. A short time later, Rev. Benham crossed the street in an effort to speak to the small group without having to raise his voice. Officer Harper and another officer rushed over, grabbed Rev.

6

Benham and escorted him back to the near side of the street, telling him he was "trespassing" on the sidewalk and again threatening to arrest him.

35. At the same time Rev. Benham was on the State Street side of the clinic, Tanya Britton was located on the Fondren Street side, handing out literature and sidewalk counseling (speaking to women and others approaching the clinic to enter).

36. Officer Harper told Britton that her unwelcome expressive activities constituted "disturbing the peace." When Britton asked for the basis of Harper's charge, Harper replied, "Because I said so."

37. Harper then told Britton she would be arrested if she did not cease sidewalk counseling, notwithstanding that Britton had engaged in the same type of sidewalk counseling in Jackson for several years without incident.

38. Shortly thereafter, a supervising officer arrived on the scene and said, "Arrest them. Arrest them all." Harper then said to Britton, "I am going to get you today." When Britton asked what Harper would be "getting" her for, Harper replied, "I am going to get you for something."

39. Britton then continued to counsel women and distribute literature despite Harper's threat of arrest.

40. Periodically throughout the time pro-life demonstrators were present at the clinic that day, Officer Harper would pull out her handcuffs, jingling them while staring at the pro-life demonstrators. At one point she told Britton, "I am going to get you today."

41. A few minutes later, as Britton was speaking with two individuals in a car after they had voluntarily stopped to listen, Harper and one other officer approached and

7

stood behind Britton.

42. When the car pulled away, Harper grabbed Britton's arm, violently jerked it behind her and said, "I've got you now, you bitch."

43. Harper then placed Britton in handcuffs, charging her with obstructing traffic. When Britton informed Harper that the handcuffs were too tight, Harper replied, "you haven't got hurt yet." Harper then forced Britton to sit in the back of the unventilated police cruiser. While in the cruiser, Britton's wrists became numb and her shoulder began to spasm.

44. Harper then drove Britton to an intake center. While en route, Harper told Britton that she knew her family and that Britton "should be ashamed" of herself for being outside the clinic engaging in pro-life activity.

45. At the intake center, Britton was shackled and placed her in a windowless room for a long period of time. Britton was then taken to Raymond Detention Center in Raymond, Mississippi.

46. Britton was not released until approximately 9:00 p.m. that night. Britton sustained several injuries and bruises as a result of Harper's abusive treatment, and missed work the rest of the week due to the injuries inflicted by Harper.

47. Despite repeated efforts by Britton's attorneys urging the City to drop the charges against her and to address the lawless behavior of the Jackson Police Department against pro-life demonstrators, Britton's case was called for trial on June 19, 2006.

48. In preparation for her defense, Britton had five subpoenas issued. On the day of her trial, Britton, her attorneys, and the five witnesses in her defense dutifully reported to court and waited for their case to be called.

8

49. After waiting the entire afternoon, and patiently listening as case after case was called and dispensed with, Britton was finally summoned by the prosecuting attorney. By then the formerly crowded courtroom was virtually empty, as it was now after 5:00 p.m.

50. The prosecuting attorney moved for a continuance, stating that the arresting officer, Harper, was not available and that he did not even have the case file.

51. When Britton's counsel objected, the court dismissed the charges over the objection of the prosecution.

**Events of May 26, 2006**

52. On the evening of May 26, 2006, Carson and others went to a sidewalk on the public ways of Jackson adjacent to a club called "The Carter" to street preach and display gospel signs. Because the area was noisy, Carson used a small sound amplifier.

53. Upon arriving, Carson and his associates were approached by unknown persons affiliated with the club and told that the sidewalk was private property. Carson then went back home to retrieve a video camera.

54. When Carson returned a short time later, employees of the club told them that the sidewalk was private property. When Carson disagreed, the owner of the club took one of Carson's signs and violently threw it to the ground. The club owner then grabbed the Carson's video camera and took it into the club.

55. Carson then called the police. Coincidentally, apparently in response to someone else's call, another officer arrived and told Carson police had received a complaint about a loudspeaker. The officer, whose Badge No. is 1405, then told Carson he needed a permit to operate a loudspeaker.

56.     When Carson inquired which ordinance required a permit, the officer said he was "just following orders" and did not cite to a specific ordinance.

57.     This police officer further informed Carson that he would not accept a complaint against the club owner for the taking of the video camera, and told Carson he could not press charges.

**Upcoming event**

58.     Plaintiffs Marilyn Carroll ("Carroll") and Carmen Vazquez ("Vazquez") are Christians who possesses the firm belief that abortion is morally wrong and sinful. They believe it is their duty to God to publicly oppose abortion. In fulfillment of this duty, they often travel to different states to engage in abortion demonstration and sidewalk counseling.

59.     Carroll and Vazquez intend to engage in oral advocacy and sidewalk counseling on the public ways of Jackson during the period July 15-21, 2006. However, Carroll and Vazquez have been informed about the incidents involving Britton, Carson, and Rev. Benham and they fear that they, too, may be arrested or cited if they engage in oral advocacy or sidewalk counseling in Jackson.

60.     All Plaintiffs desire and intend to exercise their First Amendment rights to free speech, free association, and free assembly but are chilled and deprived in the exercise of those rights by the actions of police as set forth herein.

61.     Plaintiffs have no plain, adequate, or complete remedy at law to redress the chill on their free speech rights, and this suit for injunction and declaratory judgment are their only means of securing complete and adequate relief. No other remedies would offer Plaintiffs substantial and complete protection from Defendants' unlawful acts,

policies, customs, and practices.

## ALLEGATIONS OF LAW

62. All of the acts of Defendants, their officers, agents, servants, and employees, as alleged herein, were conducted under color and pretense of the ordinances, statutes, regulations, customs, practices, and usages of the City of Jackson and/or State of Mississippi.

63. Defendants' repeated use of inapplicable or stricken laws to stifle the First Amendment rights of Plaintiffs constitutes policies, practices, customs, and usages sufficient to impose municipal liability.

64. The unlawful actions of police as alleged herein were taken or ratified by final policy makers for the City of Jackson, and thus constitutes policies, practices, customs, and usages sufficient to impose municipal liability.

65. The continued enforcement of the Jackson noise ordinance, §§ 54-86 through 54-91, after it was declared unconstitutional and enjoined from further enforcement by this Court, constitutes an unlawful policy, practice, custom, or usage sufficient to impose municipal liability.

66. The continued enforcement of the Jackson noise ordinance, §§ 54-86 through 54-91, after it was declared unconstitutional and enjoined from further enforcement by this Court, demonstrates a lack of adequate training amounting to deliberate indifference to the constitutional rights of Plaintiffs, and constitutes a policy, practice, custom, or usage sufficient to impose municipal liability.

67. The failure of the City to provide its police with adequate training in the areas of First Amendment rights, use and identification of traditional public fora, and use

of sound amplification amounts to deliberate indifference to the constitutional rights of Plaintiffs, and constitutes a policy, custom, or practice of the City of Jackson sufficient to impose municipal liability.

68. The repeated enforcement of the Jackson noise ordinance after it was declared unconstitutional and enjoined by this Court constituted contempt of court.

69. Public streets and sidewalks are traditional public fora for purposes of speech and other expressive activities protected by the First and Fourteenth Amendments to the United States Constitution.

70. The actions taken by Defendants as alleged herein were extreme and in reckless disregard of the rights of Plaintiffs.

71. Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable injury to their First and Fourteenth Amendment rights by the existence and threatened enforcement of the challenged policies, customs, and practices of the City absent declaratory and injunctive relief.

72. Third parties not before the Court are chilled in their rights to free speech by the existence of the challenged policies, customs, and/or practices as alleged herein.

### FIRST CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech/Free Press/Free Exercise of Religion)

73. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

74. The City's unlawful enforcement of the stricken noise ordinance hinders and deprives Plaintiffs of their ability to effectively communicate their pro-life message.

75. The City's unlawful and unreasonable use of disturbing the peace laws hinders and deprives Plaintiffs of their ability to effectively communicate their pro-life

message.

76. The City's unlawful and unreasonable use of trespass and obstructing traffic laws hinders and deprives Plaintiffs of their ability to effectively communicate their pro-life message.

77. The actions of Defendants in hindering and depriving Plaintiffs of their ability to effectively communicate their message are unconstitutional abridgements of Plaintiffs' affirmative rights to freedom of speech, free press, and the free exercise of religion secured by the First and Fourteenth Amendments to the United States Constitution.

78. As a direct and proximate result of Defendants' actions, policies, customs, and practices, customs as alleged herein, Plaintiffs are chilled and deprived of their rights to free speech. Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm as a direct result of Defendants' conduct.

WHEREFORE, Plaintiffs pray for relief against Defendants as hereinafter set forth in the prayer for relief.

### SECOND CAUSE OF ACTION - 42 U.S.C. § 1983
### (Free Speech-Illegal Retaliation)

79. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

80. Defendants' harassment, arrests, and threats of arrest were directed at Plaintiffs while Plaintiffs were engaged in constitutionally-protected speech activities. Such threats of arrest and harassment constituted unlawful retaliation for Plaintiffs' exercise of constitutionally protected rights. Such retaliation violated Plaintiffs' affirmative rights to freedom of speech secured by the First and Fourteenth Amendments

to the United States Constitution.

81. As a direct and proximate result of Defendants' actions in retaliating against Plaintiffs for the assertion and/or exercise of their constitutional rights, Plaintiffs were deprived of their rights to free speech. Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm as a direct result of Defendants' conduct.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in the prayer for relief.

### THIRD CAUSE OF ACTION - 42 U.S.C. § 1983
### (Peaceable Assembly)

82. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

83. The public streets dedicated to pedestrian and vehicular traffic in Jackson are traditional public fora for speech.

84. The right to peaceably assemble includes and protects the right of Plaintiffs, as members of the body politic, to engage in peaceful advocacy in support of, or in opposition to, matters of public concern, such as the practice of abortion.

85. The harassment, arrests, and threats of arrest as set forth herein were unconstitutional abridgments of Plaintiffs' right to free assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

86. As a direct and proximate result of Defendants' actions, policies, practices, and customs as alleged herein, Plaintiffs are chilled and deprived of their rights to peaceable assembly. Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm as a direct result of Defendant's conduct.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as

hereinafter set forth in the prayer for relief.

## FOUTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (False Arrest)

87. Paragraphs 1-72 of the Complaint are incorporated herein by reference as though pleaded in full.

88. The actions of Defendant Harper as alleged herein were intended to detain and confine Plaintiff Britton.

89. Plaintiff Britton was aware of the detention and confinement, and did not consent to them.

90. The detention and confinement were without probable cause.

91. As a direct and proximate cause of Defendant Harper's unlawful actions, Plaintiff Britton was injured in her Fourth and Fourteenth Amendment rights to be free from false arrest.

WHEREFORE, Plaintiff Britton prays for the relief set forth below.

## FIFTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Unreasonable Force)

92. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

93. Defendant Harpers' actions in physically restraining and handcuffing Plaintiff Britton were objectively unreasonable in light of the facts and circumstances confronting her.

94. As a direct and proximate cause of Defendant Harper's actions, Plaintiff Britton was injured in her constitutional rights to be free from the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments.

WHEREFORE, Plaintiff Britton prays for the relief set forth below.

### SIXTH CAUSE OF ACTION - 42 U.S.C. § 1983
### (Unreasonable Seizure)

95. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

96. Defendant Harper's actions in physically restraining, handcuffing, transporting, and placing Plaintiff Britton in detention constituted a seizure for purposes of the Fourth and Fourteenth Amendments.

97. Defendant Harper's actions in physically restraining, handcuffing, transporting, and placing Plaintiff Britton in detention were unreasonable in light of the surrounding circumstances.

98. As a direct and proximate cause of Defendant Harper's actions, Plaintiff Britton was injured in her constitutional right to be free from unreasonable seizure.

WHEREFORE, Plaintiff Britton prays for the relief set forth below.

### SEVENTH CAUSE OF ACTION -- Supplemental State Claim
### (False Imprisonment)

99. Paragraphs 1 through 72 of the Complaint are incorporated herein by reference as though pleaded in full.

100. Defendant Harper physically restrained, handcuffed, transported, and placed Plaintiff Britton in detention. Such restraint and detention were without Plaintiff Britton's consent and against her will.

101. Defendant Harper's actions in physically restraining, handcuffing, transporting, and placing Plaintiff Britton in detention were unlawful.

102. As a direct and proximate result of Defendant Harper's intentional

conduct, Plaintiff Britton was falsely imprisoned. Further, the actions of Defendant Harper caused Plaintiff Britton to be humiliated and embarrassed; to feel degraded and inferior; and to feel that other people would regard her with aversion or dislike.

WHEREFORE, Plaintiff Britton prays for the relief set forth below.

### EIGHTH CAUSE OF ACTION -- Supplemental State Claim
### (Assault)

103.   Paragraphs 1-72 of the Complaint are incorporated herein by reference as though pleaded in full.

103.   Defendant Harper, as alleged herein, forcefully and unexpectedly grabbed Plaintiff's armed and twisted it behind her back.

104.   Defendant Harper intended to forcefully grab Plaintiff Britton's wrist, and further intended to cause Plaintiff Britton fear, apprehension, and intimidation.

105.   Defendant Harper's forceful grabbing of Plaintiff Britton's wrist caused Plaintiff Britton to fear an imminent unwanted and offensive contact.

106.   Defendant Harper's forceful grabbing of Plaintiff Britton's wrist caused Plaintiff Britton to be fearful and apprehensive for her personal safety and bodily integrity, and caused her to feel intimidated.

107.   As a direct and proximate cause of Defendant Harper's imminent threat of offensive contact, Plaintiff Britton was injured.

WHEREFORE, Plaintiff Britton respectfully prays for the relief set forth below.

### NINTH CAUSE OF ACTION -- Supplemental State Claim
### (Battery)

108.   Paragraphs 1-72 of the Complaint are incorporated herein by reference as though pleaded in full.

109. Defendant Harper, as alleged herein, forcefully and unexpectedly grabbed Plaintiff's armed and twisted it behind her back.

110. Defendant Harper intended to forcefully grab Plaintiff Britton's wrist, and further intended to cause Plaintiff Britton fear, apprehension, and intimidation.

111. Defendant Harper's forceful grabbing of Plaintiff Britton's wrist constituted an unwanted and offensive contact.

112. As a direct and proximate cause of Defendant Harper's offensive contact, Plaintiff Britton was injured.

WHEREFORE, Plaintiff Britton respectfully prays for the relief set forth below.

### TENTH CAUSE OF ACTION -- Supplemental State Claim
### (Malicious Prosecution)

113. Paragraphs 1-72 of the Complaint are incorporated herein by reference as though pleaded in full.

114. Plaintiff Britton was criminally prosecuted.

115. Defendant Harper caused Plaintiff Britton to be criminally prosecuted.

101. The criminal prosecution terminated in Plaintiff Britton's favor.

116. The criminal prosecution was without probable cause.

103. Plaintiff Britton suffered injury and damag as a result of the prosecution.

WHEREFORE, Plaintiff Britton prays for the relief set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court:

a. Assume jurisdiction over this action;

b. Declare that Defendants' actions as alleged herein were unconstitutional;

c. Enter preliminary and permanent injunctions enjoining Defendants from

threatening or using the enjoined noise ordinance and/or breach of the peace and/or disorderly conduct laws to inhibit or suppress Plaintiff's peaceful expressive activities;

   d. Award Plaintiffs Carson and Britton nominal damages against all Defendants for the violation of their civil and constitutional rights;

   e. Award Plaintiff Britton compensatory damages against Defendants Harper and City of Jackson for the violation of her civil and constitutional rights;

   f. Award Plaintiff Britton compensatory damages against Defendants Harper for the intentional torts committed against her;

   g. Award Plaintiffs Carson and Britton punitive damages against Defendants Anderson, Harper, and Brister for the violation of their civil and constitutional rights;

   h. Award Plaintiff Britton punitive damages against Defendant Harper for intentional torts committed against her;

   i. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

   j. Grant such other and further relief as this Court deems necessary and proper.

              Respectfully submitted,

              */s/ Stephen M. Crampton*
              Stephen M. Crampton, MS Bar #9952
              Michael J. DePrimo, MS Bar # 10813
              AMERICAN FAMILY ASSOCIATION
              CENTER FOR LAW & POLICY
              P.O. Drawer 2440/100 Parkgate Drive
              Tupelo, MS 38803
              (662) 680-3886

              *Attorneys for all Plaintiffs*